UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN NORWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-01104-SNLJ |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Carmen Norwood's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Norwood now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **REVERSE and REMAND** the Commissioner's decision for further proceedings consistent with this Order.

**I.    Procedural History**

Norwood's application was denied at the initial determination level.  She then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Norwood is not

---

[1] After this case was filed, Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

1

disabled because her symptoms were not supported by the medical evidence available.
Norwood then filed a request for review of the ALJ's decision with the Appeals Council
of the Social Security Administration. The Appeals Council denied review. Thus, the
decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§
404.981, 416.1481. Norwood now seeks review by this Court pursuant to 42 U.S.C. §
405(g); *see also* 42 U.S.C. § 1383(c)(3).

## II.     Disability Determination—Five Steps

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that]

2

significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v.*

*Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III. The ALJ's Decision

At Step One, the ALJ found Norwood met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since August 1, 2011. (Tr. 17). At Step Two, the ALJ found Norwood suffers from seven medically determinable impairments: (1) post-traumatic stress disorder; (2) depression; (3) borderline intellectual functioning; (4) status post carpal tunnel release surgery; (5) herniated disc at L5-S1 effacing the S1 nerve roots; (6) morbid obesity; and (7) intermittent migraine headaches. (Tr. 17). At Step Three, the ALJ concluded Norwood does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr.18-21).

Next, in beginning the analysis of Step Four, the ALJ determined Norwood's RFC.[2] The ALJ found that Norwood

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements. The claimant is limited to work involving only simple, work-related decisions, with few, if any, work place changes; work where public interaction is not a job requirement; and can only occasionally interact with co-workers with no performance of tandem tasks, and can occasionally interact with supervisors.

(Tr. 21). As part of this determination, the ALJ found Norwood's allegations about her physical and mental symptoms' intensity, persistence, and limiting effects were not consistent with the medical records considered as a whole. (Tr. 23). The ALJ recognized

---

[2] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, -- F.3d --, 2019 WL 3402477 at *2 (8th Cir. Jul. 29, 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

5

Norwood's "various forms of treatment for her symptoms," but commented on Norwood's treatment being "generally successful in controlling those symptoms." (Tr. 22). A variety of records were emphasized showing mild-to-moderate physical and mental limitations—often with normal or near-normal follow-up examinations. (Tr. 23-26). The ALJ recognized that "claimant's treating sources occasionally make vague statements of general disability," however he explained "the evidence of record … support[s] that [Norwood] stopped work due to her pregnancy … not because of any disabling medical condition." (Tr. 22). Overall, "taking into account the clinical and laboratory evidence, the medical opinions, and [Norwood's] testimony," the ALJ concluded Norwood was capable of performing "a reduced range of medium work." (Tr. 27). With an RFC determination in hand, the determined Norwood could not perform any past relevant work. (Tr. 27-28).

At Step Five, the ALJ analyzed whether Norwood can successfully adjust to other work. The ALJ noted that if Norwood had the RFC to perform the full range of medium work—in other words, if Norwood's RFC matched perfectly with the medium work Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled. The ALJ acknowledged, however, that additional limitations impede Norwood's ability to perform all or substantially all of the medium work requirements. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Norwood's occupational base to perform medium work. The VE testified Norwood could perform work as an assembler, hand packager, or kitchen worker even after considering all of the limitations in Norwood's RFC. (Tr. 29).

6

The ALJ then found these jobs exist in significant numbers in the national economy and concluded Norwood is not disabled. (Tr. 29).

IV. **Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

V. **Discussion**

Norwood seeks remand and a rehearing on one issue. She asserts the ALJ erred when giving the medical source statements of her treating physician, Dr. Christian Sutter, only "partial weight" rather than "substantial weight" or even "controlling weight." Because the ALJ rejected some of Dr. Sutter's medical conclusions, Norwood argues that

7

her RFC was miscalculated and that this matter must be remanded for proper consideration of her RFC.

"A treating physician's opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Even if not entitled to controlling weight, such opinions typically are entitled to at least substantial weight, but may be given limited weight if they are <u>conclusory</u> or <u>inconsistent with the record</u>." *Schwandt*, 926 F.3d at 1011 (emphasis added). When controlling weight is not assigned, the ALJ assigns an otherwise appropriate weight by considering the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion, whether the treating source is a specialist, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6); 416.927(c)(2)(i)-(ii), (3)-(6).

Here, the ALJ partially rejected two medical source statements completed by Dr. Sutter—one for physical impairments, another for mental impairments—because "Sutter gave no objective support for the severity of his limitations with respect to [Norwood's] attendance at work, unscheduled work breaks, and [ability to] remain [] on task." (Tr. 24). The statements suggested Norwood would miss approximately four days of work per month, would be off task 10-20% of the time, and would need to take a ten-minute break every hour or so. (Tr. 588, 591-592). The statements otherwise indicated mostly mild-to-moderate impairments, which the ALJ adopted to the degree they "generally support[]

8

that the claimant would remain capable of performing simple, unskilled work at a medium exertional level." (Tr. 24, 587, 592). At issue here is whether the ALJ was right to disregard Sutter's additional observations regarding Norwood's attendance potential, need for work-related breaks, and ability to remain on task.

The Court concludes the ALJ erred when disregarding these observations. On point is the Eighth Circuit's discussion in *Reed v. Barnhart*, 399 F.3d 917 (8th Cir. 2005). There, the court explained:

> Finally, the ALJ faulted Dr. Dimalanta's basis of knowledge for the MSS, concluding that "Dr. Dimalanta's records fail to provide any explanation for the choices, and, in fact, reveal very little in the way of objective or structured testing." The ALJ concluded that the medical evidence indicates that Reed suffers from anxiety-related disorder, post-traumatic stress disorder, depression, and migraine headaches. <u>Besides Dr. Dimalanta's reliance on his knowledge of Reed's diagnoses with these conditions (many of which he listed in his records that were faulted by the ALJ), Reed's success with various medications that he prescribed, the results of the therapy he gave her, his documentation of her history, and his observations during multiple face-to-face visits with her, it is unclear what other tests should have been relied upon by Dr. Dimalanta so as to render his conclusions credible.</u> Dr. Dimalanta's treatment notes are consistent with his conclusions on the MSS. He noted, for example, that Reed "struggles taking care of herself because it seems unnatural to her," "still struggles with sleep" despite medication, was "afraid to see me ... because she was not able to do the homework I asked her to do," "has crowd intolerance," and "is tearful." These observations provide support for Dr. Dimalanta's conclusion on the MSS that Reed is extremely limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms."

*Id.* at 921-922 (emphasis added). Here, Dr. Sutter possesses a similar basis of knowledge to that described in *Reed*. In forming his opinions, Dr. Sutter says he considered Norwood's medical history, clinical findings, and diagnosis. Dr. Sutter treated Norwood for roughly sixteen months before completing the medical source statements. He had

9

frequent face-to-face visits with her. He continued to titrate Norwood's medications, for example increasing her Zoloft from 50mg in November 2014, to 200mg in April 2015, and switching her from 0.25mg of Xanax to 10mg of Valium in that same time period. (Tr. 467-470, 473, 756). At times medication would seem effective and at times it wouldn't. (Tr. 470, 478, 509, 527, 733). Beginning as early as April 2014, Sutter noted Norwood's sleep disturbances, dysphoric moods, decreased concentration, agitation, anxiety, and nervousness, and this trend continued through September 2015—around the time Sutter completed the medical source statements. (Tr. 460, 463, 478, 780, 792-794). Dr. Sutter was also aware of Norwood's therapy efforts and diagnoses by other providers. (Tr. 777, 792). And, in fact, other providers corroborated Sutter's conclusions by similarly finding Norwood would have difficulty with attendance and staying on task. For example, Dr. Susan Dawson, Ed.D., noted on her own Medical Source Statement for plaintiff that plaintiff's ability to understand and remember detailed instructions would be "markedly limited." (Tr. 555). Social Worker Stacy Beaird noted that plaintiff's ability to maintain attention and concentration for extended periods would be "markedly impaired." (Tr. 582-83).

The government cites a handful of records showing normal clinical examinations in suggesting Sutter's opinions are inconsistent, but that ignores the potential waxing-and-waning nature of Norwood's condition. *See Lillard v. Berryhill*, 376 F.Supp.3d 963, 984 (E.D. Mo. 2019); *see also Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995) (noting the "unstable" nature of a mental condition like PTSD that may "wax and wane after manifestation"). And because "it is extremely difficult to predict the course of mental

illness," it is also not appropriate to discount Dr. Sutter's opinions by taking a myopic view of certain records over others. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996). Dr. Sutter's opinions offer a longitudinal perspective of an unpredictable, multifaceted condition. *See Shontos v. Barnhart*, 328 F.3d 418, 426-427 (8th Cir. 2003) (holding the ALJ erred in discounting the "longitudinal perspective" of treating mental health providers despite the record being arguably "deficient in documentation to support their opinions"); *see also Jones*, 65 F.3d at 103; *Andler*, 100 F.3d at 1393. Dr. Sutter's exam notes reflect headaches, decreased concentration, anxiety, and other symptoms that support conclusions that plaintiff would regularly miss work and lack focus. Although the government points out that Sutter's notes indicate a normal mood and affect on the day Dr. Sutter filled out the form, such a notation was not unusual, as plaintiff's symptoms waxed and waned. Plaintiff's fluctuating symptoms support Dr. Sutter's opinions.

Finally, the ALJ's reasoning for discounting Dr. Sutter's opinions is at odds with the regulations. The regulations state that "<u>we give more weight</u> to medical opinions from your treating sources since these sources are likely to be the medical professionals <u>most able to provide a detailed, longitudinal picture of your medical impairment(s)</u> and may bring a unique perspective to the medical evidence <u>that cannot be obtained from the objective medical findings alone</u>." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added).

The Court does not hold Dr. Sutter's opinions were necessarily entitled to "controlling weight." It is possible, for example, that his opinions are "inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2),

11

416.927)(c)(2). But the ALJ disregarded several of Sutter's opinions—that were notably corroborated by other treating providers—simply because they were not, in the ALJ's view, supported by "objective evidence."  This Court determines that Dr. Sutter's opinions are adequately supported as explained above. *See Reed* 399 F.3d at 921-922; *Shontos*, 328 F.3d at 426-427.  Accordingly, the ALJ must reevaluate the evidence to determine whether it is otherwise "inconsistent with the overall evidence of record." *Papesh v. Colvin*, 786 F. 3d 1126, 1133 (8th Cir. 2015); *Schwandt,* 926 F.3d at 1011.

## VI. Conclusion

When a treating physician's well-supported assessment of work-related limitations is disregarded, "[an] ALJ's RFC determination is not supported by substantial evidence in the record." *Pates-Fire v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009). Because the ALJ gave erroneous reasons for attributing non-substantial weight to Dr. Sutter's opinions, the designated RFC was not supported by substantial evidence. A rehearing on this issue is therefore required.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which plaintiff Carmen Norwood seeks in her complaint is **GRANTED in part and DENIED in part**. The Court **GRANTS** Norwood's request for remand and rehearing, but **DENIES** her request to hold, without a rehearing, that she is entitled to disability insurance benefits and supplemental security income.

**IT IS FURTHER ORDERED** that the Commissioner's decision is **REVERSED and REMANDED** for further proceedings consistent with this Order. On remand, the

ALJ shall reassess the weight to be attributed to Dr. Christian Sutter's opinions and, if non-substantial weight is given, explain why the overall evidence of record militates against giving Sutter's opinions at least the presumptive "substantial weight." The ALJ shall also redetermine Norwood's RFC based on the new weight given to Dr. Sutter's opinions. A separate judgment will accompany this Order.

**IT IS FURTHER ORDERED** that Norwood shall have thirty (30) days from the entry of Judgment for which to submit an application for an award of fees and other expenses pursuant to 28 U.S.C. § 2412(d)(1)(B).

So ordered this 5th day of September 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE